Alex R. Straus, SBN 321366
alex@whitfieldbryson.com
**WHITFIELD BRYSON LLP**
16748 McCormack Street
Los Angeles, CA 91436
Telephone: (917) 471-1894
Facsimile: (310) 496-3176
*Plaintiffs' Attorneys*

*Additional attorneys on signature page*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

DESTINI KANAN and HALEY BURGESS, individually and on behalf of all others similarly situated,

        Plaintiffs,

   v.

THINX INC.,

        Defendant.

CASE NO. **2:20-cv-10341-JVS-JPR**

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT THINX INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT AND STRIKE PORTIONS THEREOF**

Judge: Hon. James V. Selna
Date: June 21, 2021
Time: 1:30 pm
Courtroom: 10C

PLAINTIFFS' RESPONSE IN OPPOSITION TO THINX'S MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION............................................................. 1

STATEMENT OF FACTS.............................................. 1

STANDARD OF REVIEW ............................................ 4

ARGUMENT .................................................................. 5

    I.    Plaintiffs Have Satisfied Rule 9(b) for Claims Sounding in Fraud ......... 5

        A. Plaintiffs Have Adequately Alleged Omissions That Violate the UCL, FAL, and CLRA .......................................... 8

        B. Plaintiffs Have Sufficiently Alleged Exposure and Reliance ...........10

    II.    Plaintiffs Have Adequately Alleged Injury in Fact .............................12

    III.    Plaintiffs' Warranty Claims Should Not Be Dismissed.......................14

        A. Plaintiffs' Express Warranty Claim is Adequately Pled .................14

        B. Plaintiffs' Implied Warranty Claim is Adequately Pled .................16

    IV.    Plaintiffs' Negligent Failure to Warn Claim is Adequately Pled...........17

    V.    There is No Basis for the Court to Strike Any Portion of Plaintiffs' Complaint........................................................18

    VI.    Plaintiffs are Entitled to Equitable Relief ..........................................21

        A. Plaintiffs are Entitled to Restitution Under the FAL and UCL.........21

        B. Plaintiffs Have Properly Pled Their Claim for Unjust Enrichment.................................................................22

    VII.    The Court Has Jurisdiction Over Non-California Class Members.........23

CONCLUSION ...........................................................25

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Owens–Corning Fiberglas Corp.,* 53 Cal.3d 987 (1991) ............... 17

*Anthony v. Pharmavite,* No. 18-CV-02636-EMC,
     2019 WL 109446 (N.D. Cal. Jan. 4, 2019) ............................................... 12

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ............................................................ 4

*Astiana v. Ben & Jerry's Homemade, Inc.,* C 10–4387 PJH,
     2011 WL 2111796 (N.D.Cal. May 26, 2011) ............................................... 8

*Astiana v. Hain Celestial Grp., Inc.,* 783 F.3d 753 (9th Cir. 2015) .............. 22, 23

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ............................................... 4

*Bly–Magee v. California,* 236 F.3d 1014 (9th Cir.2001) ................................... 6

*Brazil v. Dole Food Co.,* 935 F. Supp. 2d 947 (N.D. Cal. 2013) ...................... 13

*Brenner v. Procter & Gamble Co..,*
     2016 WL 8192946 (C.D. Cal. October 20, 2016) ..................................... 23

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County,*
     137 S. Ct. 1773 (2017) ...................................................................... 23, 24

*Bronson v. Johnson & Johnson, Inc.,* No. C 12-04184 CRB,
     2013 WL 5731817 (N.D. Cal. Oct. 22, 2013) ......................................... 11

*Brown v. Hain Celestial Group, Inc.,* 913 F.Supp.2d 881 (N.D.Cal.2012) ......... 15

*Bruton v. Gerber Prods. Co.,*
     No. 12-CV-02412-LHK, 2014 WL 172111 (N.D. Cal. Jan. 15, 2014) ......... 11

*Cabrera v. Bayer Healthcare, LLC,* No. LA CV17-08525 JAK,
     2019 WL 1146828 (C.D. Cal. March 6, 2019) ......................................... 23

*Carlin v. Superior Ct.,* 13 Cal. 4th 1104 (1996) ............................................. 18

*Chacanaca v. Quaker Oats Co.,* 752 F.Supp.2d 1111 (N.D.Cal.2010) ............8, 13

*Clancy v. The Bromley Tea Co.,*
2013 WL 4081632 (N.D.Cal. Aug. 9, 2013) ................................................... 8

*Colgan v. Leatherman Tool Group, Inc.,* 135 Cal.App.4th 663 (2006) .............. 21

PLAINTIFFS' RESPONSE IN OPPOSITION TO THINX'S MOTION TO DISMISS

*Daugherty v. American Honda Motor Co., Inc.,*
   144 Cal. App. 4th 824 (2006) ................................................................ 9

*Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir.1993) .......................... 19

*Finn v. G.D. Searle & Co.,* 35 Cal.3d 691 (1984) ............................................ 18

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.,*
   No. 17-CV-00564 NC, 2017 WL 4224723 (N.D. Cal. Sept. 22, 2017 .......... 24

*In re Clorox Consumer Litig.,* 894 F.Supp.2d 1224 (N.D.Cal. 2012) ................ 11

*In re NJOY, Inc. Consumer Class Action Litigation,*
120 F. Supp.3d 1050 (C.D. Cal. 2015) ............................................................ 21

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.,*
   996 F. Supp. 2d 942, 991 (S.D. Cal. 2014) ............................................9, 22

*In re Stac Elecs. Sec. Litig.,* 89 F.3d 1399 (9th Cir.1996) .................................. 6

*In re Toyota Motor Corp. Unintended Acceleration Mktg.,*
   *Sales Practices, & Products Liab. Litig.,*
   754 F.Supp.2d 1145 (C.D.Cal.2010) ........................................................ 15

*In-N-Out Burgers v. Smashburger IP Holder LLC,*
   2018 WL 7891028 (C.D. Cal., 2018) ........................................................... 6

*Jonathan Chuang v. Dr. Pepper Snapple Grp., Inc.,*
   2017 WL 4286577, at *7 (C.D. Cal. Sept. 20, 2017) .................................. 23

*Jones v. ConAgra Foods, Inc.,* 912 F.Supp.2d 889 (N.D. Cal., 2012) .............5, 14

*Kearns v. Ford Motor Co.,* 567 F.3d 1120 (9th Cir.2009) ..........................5, 6, 9

*Kellman v. Whole Foods Market, Inc.,*
   No. 17-CV-06584-LB, 2018 WL 2938612 (N.D. Cal. June 12, 2018) .......... 14

*Massaro v. Beyond Meat, Inc.,*
   No. 320CV00510AJBMSB, 2021 WL 948805 (S.D. Cal. Mar. 12, 2021) .... 24

*Maya v. Centex Corp.,* 658 F.3d 1060 (9th Cir. 2011) ..................................... 13

*Munoz v. MacMillan,* 195 Cal.App.4th 648 (2011) ........................................ 22

*Mussat v. IQVIA, Inc.,* 953 F.3d 441 (7th Cir. 2020) ...................................... 25

PLAINTIFFS' RESPONSE IN OPPOSITION TO THINX'S MOTION TO DISMISS

*Neubronner v. Milken,* 6 F.3d 666 (9th Cir.1993) ............................................... 6

*Pirozzi v. Apple Inc.,* 913 F.Supp.2d 840 (N.D.Cal.2012) ................................ 13

*Rosales v. FitFlop USA, LLC,* 882 F.Supp.2d 1168 (S.D.Cal. 2012) ................ 15

*Rutman Wine Co. v. E. & J. Gallo Winery,* 829 F.2d 729 (9th Cir. 1987) ........... 18

*Semegen v. Weidner,* 780 F.2d 727 (9th Cir.1985) ........................................... 10

*Sidney–Vinstein v. A.H. Robins Co.,* 697 F.2d 880 (9th Cir. 1983) .................... 21

*Sierra Club v. Morton,* 405 U.S. 727 (1972) .................................................... 13

*Sloan v. Gen. Motors LLC,* 287 F.Supp.3d 840 (N.D. Cal. 2018) ...................... 24

*Sotomayor v. Bank of Am., N.A.,* 377 F. Supp. 3d 1034 (N.D. Cal. 2019) ...... 23, 24

*Sousa v. 7-Eleven, Inc.,* No. 19-CV-2142 JLS (RBB),
  2020 WL 6399595 (S.D. Cal. Nov. 2, 2020) ............................................. 24

*Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016) ...................................... 13

*Stewart v. Kodiak Cakes, LLC,* No. 19-CV-2454-MMA (MSB),
  2021 WL 1698695 (S.D. Cal. Apr. 29, 2021) ............................................. 11

*United States ex rel Cafasso v. Gen. Dynamics C4 Sys., Inc.,*
637 F.3d 1047 (9th Cir. 2011) ......................................................................... 6

*Vicuna v. Alexia Foods, Inc.,*
  No. C 11-6119 PJH, 2012 WL 1497507 (N.D. Cal. Apr. 27, 2012) ............. 15

*Warth v. Seldin,* 422 U.S. 490 (1975) ............................................................ 13

*Werdebaugh v. Blue Diamond Growers,*
  No. 12–CV–2724–LHK, 2014 WL 2191901 (N.D.Cal. May 23, 2014) ........ 21

*Whittlestone, Inc. v. Handi-Craft Co.,* 618 F.3d 970 (9th Cir. 2010) ................. 19

*Williams v. Gerber Prod. Co.,* 552 F.3d 934 (9th Cir. 2008) ............................. 6

*Wilson v. Hewlett-Packawrd Co.,* 668 F.3d 1136 (9th Cir. 2012) .................. 9, 10

*Yamamoto v. Omiya,* 564 F.2d 1319 (9th Cir.1977)   ...................................... 18

*Yumul v. Smart Balance, Inc.,* 733 F. Supp. 2d 1117 (C.D. Cal. 2010).  ......... 11, 12

**Statutes**

Cal. Com. Code § 2314....................................................................16

Cal. Com. Code § 2315....................................................................16

**Other Authority**

F.R.C.P. 9(b) .................................................................. 4-9, 11, 12

F.R.C.P. 12(b)(6) .......................................................................... 4

F.R.C.P. 12 (f) ......................................................................18-21

U.S. Const. art. III................................................................ 13, 14

PLAINTIFFS' RESPONSE IN OPPOSITION TO THINX'S MOTION TO DISMISS

## INTRODUCTION

Plaintiffs, by and through their undersigned counsel, hereby respond in opposition to Defendant Thinx, Inc.'s Motion to Dismiss Plaintiffs' First Amended Class Action Complaint[1] and Strike Portions Thereof ("Motion"). For the reasons described herein, Plaintiffs' respectfully request that Defendant's Motion be denied.[2]

## STATEMENT OF FACTS

This action involves Defendant Thinx, Inc.'s ("Thinx" or "Defendant") deceptive and unlawful conduct in the design, manufacture, marketing, advertising and labeling of absorbent underwear. Plaintiffs Destini Kanan and Haley Burgess are women who purchased Thinx's Underwear. The Underwear is marketed to women who, due to concerns about the use of chemicals in traditional feminine hygiene products and the impact of single-use plastic products on the environment, are seeking an alternative method of managing their menstruation. (FAC ¶¶ 3, 19-21.) Thinx, recognizing this market demand, has created a product specifically tailored to these concerns. (FAC ¶ 22.).

Specifically, Thinx's Underwear is an absorbent, reusable underwear designed to replace pads and tampons and worn as traditional underwear. (FAC ¶ 24) Thinx has marketed the Underwear to women by positioning itself as an honest, trustworthy brand that is comfortable discussing menstruation and surrounding taboos. (FAC ¶¶ 25, 27).

---

[1] Referred to throughout as the "Complaint" or "FAC."
[2] Plaintiffs will consent to the dismissal of injunctive claims without prejudice.

Thinx advertises the Underwear on a variety of platforms, and in all of its advertising and marketing materials, Thinx consistently represents its Underwear is a safe and healthy feminine protection product. (FAC ¶¶26 and 4).

On its website, Thinx provides a myriad of representations regarding the quality and safety of the Underwear, including that the products "uphold the highest standards of product safety;" (FAC ¶ 7) are rigorously tested, independently certified, third-party tested, and "absolutely" free of harmful chemicals; (FAC ¶ 28); every component of the Underwear, from fabric to trim, is thoroughly tested and certified for ecological safety. (FAC ¶ 29); and odor controlling technology is represented as safe, non-toxic, and non-migratory silver. (FAC ¶¶ 28-29). Some of the Underwear is also represented as organic. (FAC ¶ 66).

Plaintiff Kanan is one of many women seeking a safer, and more sustainable approach to her feminine hygiene care. (FAC ¶ 3). After seeing Thinx's online advertising, Ms. Kanan sought out Thinx's website to learn more about the Underwear (FAC ¶ 86-87). Consequently, Ms. Kanan saw various representations on the website, including that the Underwear was safe, organic, and free from "harmful chemicals." (FAC ¶¶ 88, 104). She specifically relied on the representations contained within Thinx's website, in addition to its other advertising and marketing, in deciding to purchase the Underwear in 2019. (FAC ¶88.) Ms. Kanan purchased the Organic Cotton Brief, which, in addition to claims on the website, was also represented as organic on the product's label and packaging. (FAC ¶ 88.)

Plaintiff Burgess purchased Thinx Underwear because she was actively seeking an eco-friendly and chemical-free alternative to traditional feminine hygiene products. (FAC ¶ 96). She specifically sought out information on Thinx's website in order to determine the safety of the products. (FAC ¶¶ 97-98). In deciding to purchase the Underwear, she relied on Thinx's representations on its website that it was safe, free of chemicals, and certified for ecological safety. (FAC ¶ 98).

Based on Thinx's online advertising, marketing, product labels, and packaging, Plaintiffs reasonably believed they were choosing a product that would eliminate their exposure to chemicals during their menstrual cycles and would be sustainable for the environment. However, despite Thinx's consistent, uniform marketing of the Underwear as a product that is free from "harmful chemicals," the Underwear contains a variety of chemicals that are of great concern to Plaintiffs and consumers at large. As described in detail herein, based on Plaintiffs' independent testing and Thinx's own admissions, the Underwear contains PFAS chemicals and silver nanoparticles, which are known to be harmful to both humans and the environment, posing significant health and environmental concerns. (FAC ¶ 33-47, 51-55).

Thinx also represented its cotton Underwear as organic, despite the fact that it contains harmful chemicals and is not made with exclusively organic cotton. Though advertised as being made of "cozy organic cotton," the Underwear's gusset is made from *non-organic cotton*. (RJN, Ex. D at p. 3). The gusset is worn next to the vagina and vulva where chemicals are absorbed at a higher rate than other areas of the body.

3

(FAC at ¶ 54). Thinx also claimed independent organic certifications which they knew did not refer to their finished Underwear. (FAC¶ 64).

For years, Thinx knew the true nature of the chemicals contained in the Underwear, but nevertheless never disclosed this information to consumers. (FAC at ¶ 111.) Even after being alerted to the presence of harmful chemicals in its products in early 2020, Thinx continued to conceal this information from consumers. (FAC ¶ 112.)

As a result of Thinx's widespread, uniform representations about the Underwear, along with its failure to disclose material information to consumers regarding the presence of PFAS and silver nanoparticles, Plaintiffs paid for a product they believed to be organic, sustainable, safe, and free of potentially dangerous chemicals, and did not receive the benefit of their bargain. (FAC ¶ 3.).

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell At. Corp. v. Twombly*, 550 U.S. 544, 570 (2007.) A claim has "facial plausibility" if the plaintiff pleads facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In cases which include claims for fraud, Rule 9(b) of the Federal Rules of Civil Procedure provides that: "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Rule 9(b) does not raise

the pleading standard to the level required to survive a motion for summary judgment or to prevail at trial, requiring plaintiff to actually prove all material issues of her case; instead, plaintiff need only set forth the particular facts of the fraud, which at this stage must be accepted as true, to survive a motion to dismiss.

## **ARGUMENT**

Defendant argues in its Motion to Dismiss that Plaintiffs' Complaint should be dismissed in its entirety, and/or that portions of the Complaint should be stricken as "extraneous." However, Defendant's Motion should be denied because the arguments made therein are more suited for summary judgment, and otherwise conclusory and riddled with mischaracterizations of Plaintiffs' allegations and legal authority.

### I.    **Plaintiffs Have Satisfied Rule 9(b) for Claims Sounding in Fraud**

Thinx argues that Plaintiffs have failed to meet Rule 9(b). However, even without specifying *which* of Plaintiffs' claims it seeks to dismiss[3], Thinx still fails to identify *any* claim for which Plaintiffs have failed to satisfy Rule 9(b) in their well-pled Complaint. Instead, Thinx discusses the credibility of Plaintiffs' allegations relating to PFAS, organic cotton, and silver nanoparticles—a factual dispute with no bearing on a Motion to Dismiss. *See Jones v. ConAgra Foods, Inc.*, 912 F.Supp.2d 889, 898 (N.D.

---

[3] Fraud is not a necessary element of a claim under the CLRA and UC. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir.2009). However, "fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used)." *Id.* Thus even if the Court finds that these two causes of action do sound in fraud, Plaintiffs have still adequately pled their claims.

Cal., 2012)(concluding "that this case is far less about science than it is about whether a label is misleading."); *In-N-Out Burgers v. Smashburger IP Holder LLC*, 2018 WL 7891028, at *5 (C.D. Cal., 2018). The motion to dismiss is not a procedure for resolving a contest between the parties about the facts or merits of the plaintiff's case. *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

Rule 9(b) requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1124 (9th Cir.2009). "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *United States ex rel Cafasso v. Gen. Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1055 (9th Cir. 2011) (internal citations omitted). Rule 9(b) demands that the circumstances constituting the alleged fraud "be 'specific enough to give defendants notice of the particular misconduct." *Bly–Magee v. California,* 236 F.3d 1014, 1019 (9th Cir.2001) (quoting *Neubronner v. Milken,* 6 F.3d 666, 671 (9th Cir.1993)).

Rule 9(b) serves three purposes: (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints "as a pretext for the discovery of unknown wrongs"; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to "prohibit [ ] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *In re Stac Elecs. Sec. Litig.,* 89

PLAINTIFFS' RESPONSE IN OPPOSITION TO THINX'S MOTION TO DISMISS

F.3d 1399, 1405 (9th Cir.1996) (quotation omitted). Satisfying Rule 9(b) pleading requirements does not require Plaintiffs to meet a summary judgment standard, and all properly-pled fraud allegations must be taken as true for purposes of deciding the motion to dismiss.

Plaintiffs' allegations meet the requirements of Rule 9(b) for their CLRA, UCL, and FAC claims. Plaintiffs have alleged that Thinx, and its authorized representatives, made the representations which form the basis of these claims. (FAC ¶¶ 4, 25, 70). Thinx's uniform, pervasive representations about the Underwear included, *inter alia*: that the cotton Underwear was organic (FAC ¶¶28, 58, 64, 66, 88, 98); that the products were free of harmful chemicals (FAC ¶¶ 28); that the products were safe (FAC ¶¶ 22, 28, 29, 47, 70); that the products did not contain toxic metals or engineered nanoparticles (FAC ¶¶ 29, 47); that the silver in the Underwear does not migrate (FAC ¶¶ 28, 47); that the products are rigorously tested for harmful chemicals using the strictest safety testing available (FAC ¶¶ 28, 29, 70); that every component of the Underwear from fabric to trim is tested and certified for ecological safety (FAC ¶ 29); that all of its testing results are honest and objective (FAC ¶ 29.); that Thinx is honest and transparent about how their products are made (FAC ¶ 27); that it upholds the highest standards of product safety (FAC ¶ 27); that Thinx provides safe, comfortable, and sustainable options for people with periods and bladder leaks; (FAC ¶ 27); and that the Underwear is designed and made to be safe for people (FAC ¶ 70.)

These representations date back to at least 2019, with some representations spanning the product's lifetime. (FAC ¶¶ 22, 34, 62, 70,85, 91, 94). These statements appear on Thinx's online, on social media, on its packaging and labeling, on its instructional videos and in its public statements and/or press releases. (FAC ¶¶ 24, 26-30, 70, 77, 87, 97, 106-107). Plaintiffs have alleged exposure to and reliance on these representations in deciding to purchase the Underwear, and would not have purchased the Underwear if they had been aware these representations were false. (FAC ¶¶ 86-89, 93, 96-101). These representations are false and/or misleading because, *inter alia*, the Underwear contains PFAS and silver nanoparticles, which are chemicals harmful to humans and known to migrate (FAC ¶¶ 31-57); the cotton Underwear is not organic (RJN, Ex. D at p 3.); Thinx has failed to use any rigorous scientific methods and/or safety testing (FAC ¶¶ 70-84.); and Thinx has not been honest, objective, or transparent about how its products are made (*Id*.).

Notably, ***Thinx never even argues that a reasonable customer would not be misled by its claims--*** because it cannot. As Plaintiffs' allegations are more than sufficient to give Thinx notice of the "who, what, where, when, and why" of the particular misconduct alleged. *See, e.g.*, *Chacanaca v. Quaker Oats Co.*, 752 F.Supp.2d 1111, 1126 (N.D.Cal.2010); *Clancy v. The Bromley Tea Co.*, 2013 WL 4081632, at * 10–11 (N.D.Cal. Aug. 9, 2013); *Astiana v. Ben & Jerry's Homemade, Inc.*, C 10–4387 PJH, 2011 WL 2111796 (N.D.Cal. May 26, 2011).

### A. Plaintiffs Have Adequately Alleged Omissions that Violate the UCL, FAL and CLRA.

Thinx argues that Plaintiffs' allegations are "insufficient to support an omissions claim under Rule 9(b)." In support of its argument, Thinx cites to the wholly inapplicable *Kearns v. Ford Motor Co.* 567 F.3d 1120. (9th Cir. 2009). In *Kearns*, the Ninth Circuit *did not address omissions-based claims*. Not only does Thinx cite to incorrect and/or inapplicable legal authority, and further fails to recognize that an omission claim may be actionable even absent a duty to disclose.

Under the UCL, FAL, and CLRA, omission-based claims are actionable if the omission is "contrary to a material representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *See In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 991 (S.D. Cal. 2014) (quoting *Daugherty v. American Honda Motor Co., Inc.* 144 Cal. App. 4th 824, 825 (2006)). A duty to disclose may arise when, *inter alia*, a defendant (1) had exclusive knowledge of material facts not known to the plaintiff; (2) it actively conceals a material fact from the plaintiff; or (3) when the defendant makes partial representations but also suppresses some material fact. *Wilson v. Hewlett-Packawrd Co.*, 668 F.3d 1136, 1142 (9th Cir. 2012).

Plaintiffs have adequately alleged Thinx omitted material facts regarding the chemicals and safety of its Underwear, that the guesstt of the Underwear was not organic (RJN, Ex. D at p 3; FAC ¶ 28). and that its Underwear contained harmful

9

chemicals, including PFAS. (FAC ¶¶ 28, 30, 34). These allegations are sufficient to plead an omissions claim under the UCL, FAL, and CLRA.   Further, as the manufacturer, Thinx had exclusive knowledge of material facts which were not known to Plaintiffs. As Plaintiffs alleged, Thinx was on notice of the existence of chemicals in its Underwear by at least January 2020. (FAC ¶ 34.) Plaintiffs and consumers would have no knowledge of these chemicals, nor could they reasonably discover their presence prior to purchase.

The fact that Thinx represented its Underwear was free of long-chain PFAS, while failing to disclose the presence of short-chain PFAS chemicals, is also a plain example of "mak[ing] a partial representation while suppressing a material fact." *Wilson*, 668 F.3d at 1142 (9th Cir. 2012). Additionally, Thinx: presented GOTS organic certifications to the public while concealing the fact that such certifications did not apply to the finished Underwear (FAC ¶ 64); affirmatively represented its cotton Underwear as organic despite the fact that the cotton in the gusset was non-organic (FAC ¶ 66; RJN, Ex. D at p 3); and continuously represented that the Underwear was free of harmful chemicals when, *at minimum*, Thinx was aware that the Underwear contained silver nanoparticles which are known to be harmful to humans and the environment. (FAC ¶¶ 47-57.) Accordingly, Plaintiffs have more than met the heightened pleading requirements related to these omission-based claims, and have thus provided Thinx with adequate notice to defend against the charges. *See Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir.1985).

PLAINTIFFS' RESPONSE IN OPPOSITION TO THINX'S MOTION TO DISMISS

## B. Plaintiffs Have Sufficiently Alleged Exposure and Reliance.

Thinx next argues Plaintiffs have failed to identify any specific representation that they saw. However, Rule 9(b) demands only a level of detail sufficient to place Defendant on notice of the basis of Plaintiffs' claims and demonstrate that Plaintiffs are not on a "fishing expedition"—which Plaintiffs have more than met here. *See In re Clorox Consumer Litig.*, 894 F.Supp.2d 1224, 1234 (N.D.Cal. 2012) (finding defendant was able to locate and produce its own advertisements described in the complaint in furtherance of the purposes of Rule 9(b)'s heightened pleading standards); *see also Bronson v. Johnson & Johnson Inc.,* No. C 12-04184 CRB 2013 WL 5731817, at *6 (N.D.Cal. October 22, 2013)*; Bruton v. Gerber Prods. Co.*, No. 12-CV-02412-LHK, 2014 WL 172111 (N.D. Cal. Jan. 15, 2014); *Stewart v. Kodiak Cakes, LLC*, No. 19-CV-2454-MMA (MSB), 2021 WL 1698695, at *15 (S.D. Cal. Apr. 29, 2021).

Plaintiffs' Complaint identifies a plethora of misleading statements made by Thinx. *See Section A.infra.* Plaintiffs alleged they saw and relied on representations which appeared on Thinx's website, advertising, product labels, and packaging (FAC ¶¶ 86- 89, 96- 98). Plaintiffs have also reproduced portions of the website and product labels. (FAC ¶¶ 27-30, 47). Plaintiffs have alleged that these representations date back to at least 2019, with some representations spanning the Product's lifetime. (FAC ¶¶ 22, 34, 62, 70, 85, 91, 94).

Thinx cites *Yumul v. Smart Balance, Inc.*, in support of its motion to dismiss, but that case is readily distinguishable. 733 F. Supp. 2d 1117 (C.D. Cal. 2010). In *Yumul,*

11

this Court dismissed plaintiff's UCL and FAL claims for failure to meet the pleading standards for fraud, concluding that plaintiff failed to identify *where* she had purchased the product and *when* during the ten year class period she had seen the representations upon which her complaint was based. *Id.* Unlike the plaintiff *Yumul*, Plaintiffs here have alleged the "when, where, and how" of the misrepresentations. *See Fernandez v. Atkins Nutritionals, Inc.,* No. 317CV01628GPCWVG, 2018 WL 280028, at *12 (S.D. Cal. Jan. 3, 2018) (distinguishing *Yumul* and finding if the plaintiff identifies the label claim at issue, where the statement was made, why it was fraudulent, and how it affected the plaintiff, the purposes of Rule 9(b) are served.) Here, Plaintiffs identified that the Underwear was purchased from Nordstrom and Amazon in 2019 and 2020 respectively, but more importantly have alleged where the misrepresentations and omissions were made. (FAC ¶¶ 85-89, 94, 96-98). Plaintiffs have also alleged Thinx's misrepresentations and omissions about the safety and quality of the Underwear have been uniform throughout the class period (FAC ¶¶ 4, 27-29, 88,192). They also alleged that they relied on these misrepresentations. (*Id.*).[4]

## II.   PLAINTIFFS HAVE ADEQUATELY ALLEGED INJURY IN FACT

---

[4] Thinx also cites *Anthony v. Pharmavite*, No. 18-CV-02636-EMC, 2019 WL 109446 (N.D. Cal. Jan. 4, 2019), which is inapposite as the court analyzed use of an asterisk disclaimer in conjunction with an alleged misrepresentation, which is not present here.

PLAINTIFFS' RESPONSE IN OPPOSITION TO THINX'S MOTION TO DISMISS

To establish Article III standing, a complaint must allege (1) the plaintiff suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). "To establish an injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized.' " *Id.* at 1548. "A particularized injury is one that affects the plaintiff in a 'personal and individual way.' " *Id.* "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly…allege facts demonstrating' each element of standing." *Id.* at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518, (1975).)

Here, Plaintiffs allege they and Class Members "spent money that, absent defendants' actions, they would not have spent," which constitutes "a quintessential injury-in-fact." *Maya v. Centex Corp.,* 658 F.3d 1060, 1069 (9th Cir.2011); *see also Sierra Club v. Morton,* 405 U.S. 727, 733–34, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) ("[P]alpable economic injuries have long been recognized as sufficient to lay the basis for standing"); *cf. Pirozzi v. Apple Inc.,* 913 F.Supp.2d 840, 846–47, 2012 WL 6652453, *4 (N.D.Cal.2012); *see also Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947 (N.D. Cal. 2013) (finding that overpaying for goods or purchasing goods a person otherwise would not have purchased based upon alleged misrepresentations by the manufacturer would satisfy the injury-in-fact and causation requirements for Article III standing); *Chacanaca v. The Quaker Oats Co.,* 752

F.Supp.2d 1111, 1125 (N.D.Cal.2010); *Jones v. ConAgra Foods, Inc.,* 912 F.Supp.2d. 889, 901 (N.D.Cal.2012).

Specifically, Plaintiffs allege economic injury as they purchased products that they would not have otherwise purchased, or would have paid substantially less for, had they known the truth about Thinx's material misrepresentations. (FAC ¶¶ 3, 67, 88, 93, 98, 101). Assuming all of the factual allegations alleged in the Complaint to be true, the Court must accept that Plaintiffs suffered a concrete and particularized injury based on the fact that they were allegedly deceived by Thinx's representations, and then paid money that they would not otherwise have paid had they known about the true nature of Thinx's products. Plaintiffs have sufficiently alleged injury in fact in order to satisfy the requirements for Article III standing.

### III.   PLAINTIFFS' WARRANTY CLAIMS SHOULD NOT BE DISMISSED.

Plaintiffs have adequately alleged facts establishing that Defendant breached its various warranties.

### A. Plaintiffs' Express Warranty Claim is Adequately Pled.

"To prevail on a breach of express warranty claim, Plaintiffs must prove: (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Kellman v. Whole Foods Market, Inc.*, No. 17-CV-06584-LB, 2018 WL 2938612, at *3 (N.D. Cal. June 12, 2018)(internal citations omitted). Proof of reliance

on specific promises or representations is not required. *See Brown v. Hain Celestial Group, Inc.,* 913 F.Supp.2d 881, 899–900 (N.D.Cal.2012).

Warranties can take various forms, including advertisements and product packaging, and brochures, provided that plaintiff was exposed to the particular statement. *See Rosales v. FitFlop USA, LLC,* 882 F.Supp.2d 1168, 1178 (S.D.Cal.2012); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.,* 754 F.Supp.2d 1145, 1183 (C.D.Cal.2010)); *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 899-90 (N.D. Cal. 2012) (interpreting "Pure, Natural & Organic" label on cosmetic products as express warranty); *Vicuna v. Alexia Foods, Inc.*, No. C 11-6119 PJH, 2012 WL 1497507, at *2 (N.D. Cal. Apr. 27, 2012) (interpreting "All Natural" label on potatoes as express warranty that they did not have artificial ingredients).

Thinx has made various statements in its advertising, marketing, and packaging that form the basis of an express warranty. *See Section.I* (detailing Thinx's misrepresentations). Thinx has claimed on its website, *inter alia*, that its products are free of harmful chemicals, sustainable, and rigorously tested to put the consumer's safety first. (FAC ¶¶ 27, 28, 29). Thinx has also claimed that its cotton Underwear is "organic" on both its website and the product's packaging. (FAC ¶¶ 28, 58, 88, 98). Plaintiffs have alleged that they saw and relied upon these statements. (FAC ¶¶ 88-89, 96-98, 135). Plaintiffs have also pled that Thinx breached these warranties by selling Underwear that contains harmful chemicals, silver nanoparticles, and are not organic.

PLAINTIFFS' RESPONSE IN OPPOSITION TO THINX'S MOTION TO DISMISS

(FAC ¶ 133.) Plaintiffs alleged that the Underwear breached the numerous express warranties made by Thinx: the Underwear was not organic cotton, was not safe for normal use of collecting or absorbing menstrual fluid and other vaginal discharge, and contained harmful chemicals. (FAC ¶¶ 88, 90, 93, 98, 99, 101). Plaintiffs alleged the multiple defects within the Underwear were present at the point of sale (FAC ¶¶ 115, 146). Plaintiffs have sufficiently alleged their express warranty claims at this stage.

## B. Plaintiffs' Implied Warranty Claim is Adequately Pled.

Plaintiffs have properly pled their implied warranty claims. A product is not merchantable if it is not "fit for the ordinary purposes for which such goods are used." Cal. Com. Code § 2314(2)(c). However, it is similarly not merchantable if it does not "conform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f) "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is ... an implied warranty that the goods shall be fit for such purpose." Cal. Com. Code § 2315. "A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business." Official Comment 2, Cal. Com. Code § 2315.

Thinx knew at the time of sale to Plaintiffs it was selling a product that was directed to a specific group of consumers: women intending to purchase a safe and

economic alternative to female hygiene products. (FAC ¶ 102). Thinx was created with the purported purpose of "providing safe, comfortable, and sustainable options for people with periods," using the highest standards of product safety. (FAC ¶ 22). That Plaintiffs purchased the Underwear for their alleged purpose is not only plausible, but it was precisely how Thinx marketed and advertised the product to consumers. (FAC ¶ 27). Thinx was most certainly aware that consumers relied upon its skill and/or judgment in furnishing safe and sustainable menstrual products. Plaintiffs have sufficiently pled a particular purpose for buying the Underwear by alleging they bought it as a safe, chemical-free and organic alternative to traditional menstrual products. (FAC ¶¶ 3, 88-89, 96, 98.) Plaintiffs alleged that the Underwear did not conform to the particular purposes advanced by Thinx, namely, that the Underwear was not cotton, was not safe for normal use and contained harmful chemicals. (FAC ¶¶ 88, 90, 93, 98, 99, 101). Therefore, Plaintiffs have sufficiently alleged an implied warranty claim at this stage.

## IV. PLAINTIFFS' NEGLIGENT FAILURE TO WARN CLAIM IS ADEQUATELY PLED.

In a failure to warn case based on negligence, a plaintiff [must] prove that a manufacturer or distributor did not warn of a particular risk for reasons which fell below the acceptable standard of care, i.e., what a reasonably prudent manufacturer would have known and warned about. *Anderson v. Owens–Corning Fiberglas Corp.,* 53 Cal.3d 987, 1002 (1991). Whether a manufacturer's conduct was reasonable is a

question for the factfinder. *Finn v. G.D. Searle & Co.,* 35 Cal.3d at 700 (1984). Contrary to Thinx's argument that the FDA doesn't require disclosures on menstrual products, a manufacturer is not absolved of liability when it failed to warn of a *known or reasonably scientifically knowable risk*. *See Carlin v. Superior Ct*., 13 Cal. 4th 1104, 1112–13, 920 P.2d 1347, 1351 (1996).

Most notably, Thinx was put on notice in January of 2020 that its Underwear contained harmful chemicals; however, Thinx continued to conceal this information and otherwise misrepresent the safety of its products. As Plaintiffs have alleged, other similar clothing companies have disclosed the presence of PFAS chemicals in their apparel and publicly committed to phasing them out of their apparel manufacturing. (FAC ¶44). Similarly, use of silver nanoparticles has also decreased in popularity due to health and environmental concerns. (FAC ¶ 46). Taking the Plaintiffs allegations as true, it is reasonable to assume that a reasonably prudent manufacturer would have known and warned about the presence of PFAS. Therefore Thinx's motion to dismiss this claim must be denied.

## V. THERE IS NO BASIS TO STRIKE ANY PORTION OF PLAINTIFFS' COMPLAINT.

Thinx attempts to circumvent the appropriate methods of challenging Plaintiffs' Complaint, but Rule 12(f) is 'neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint. *Yamamoto v. Omiya,* 564 F.2d 1319, 1327 (9th Cir.1977); *see also Rutman Wine Co. v. E. & J. Gallo Winery,* 829 F.2d 729, 738 (9th

Cir.1987).  In order to strike allegations pursuant to Rule 12(f), the Court must first determine if the allegations which Defendant moves to strike are either: (1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973–74 (9th Cir. 2010). Allegations which do not fall within the plain language of Rule 12(f) may not be stricken.

Thinx argues that the portions of the Complaint it seeks to strike are "immaterial and extraneous," which requires the Court to find that the allegations "ha[ve] no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir.1993), *rev'd on other grounds*.

Plaintiffs' allegations regarding Thinx's marketing approach, specifically its uniform marketing efforts, are plainly relevant to *all* of Plaintiffs' claims. Thinx's assertion that no Plaintiff relied on Thinx's marketing approach is a blatant mischaracterization of Plaintiffs' entire FAC. (*See e.g.* FAC ¶¶ 4, 24-27, 86-93, 94-101, 192). Thinx argues Plaintiffs' allegations are "unsubstantiated," but the allegations are supported by independent expert investigation, studies published by the National Center for Biotechnology Information (a division of the National Institute of Health), the European Chemicals Agency, and the European Commission. (FAC ¶¶ 49-57, fn 25-34.) Furthermore, these allegations are relevant to Plaintiff's claims and there is no valid basis in Rule 12(f) for the Court to strike them.

Similarly, there is no basis to strike Plaintiffs' allegations regarding whether Thinx Underwear is "organic." Global Organic Textile Standards ("GOTS") are not speculative; the standards for certification are objective, publicly available, and reputable global standards for clothing quality. It is not "unsupported" or "conclusory" that Thinx held out [as its own] a GOTS certificate, which had issued to another company- especially given the fact that Thinx is ineligible for a GOTS certification for its finished Underwear due to the presence of PFAS chemicals.[5] (FAC ¶ 64). It is also not "conclusory" to allege the inclusion of man-made PFAS chemicals renders a product "not organic" by definition. (FAC ¶¶ 59, 68). Furthermore, even if any of Plaintiffs' allegations were unsupported or conclusory—which they are not-- this would still not provide a basis to strike them under Rule 12(f).

Here, the distinction between the long-chain and short-chain PFAS chemicals not only provides necessary background as to the use of these chemicals in Thinx's products and the apparel market at large, these allegations are also relevant to Thinx's misrepresentations. Plaintiffs have alleged that Thinx issued a statement denying its use of long-chain PFAS chemicals for the purpose of misleading reasonable consumers into believing no chemicals were present in the Underwear. (FAC ¶ 75). Thus, Thinx has offered no legal basis for striking Plaintiffs' allegations, as they are relevant and

---

[5] Thinx's claims that the holder of the certificate provides cotton in certain Thinx Underwear cannot be considered at this stage. (Def. Mot. at 8.) However, when ruling on a motion to dismiss, the Court may "generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP,* 476 F.3d 756, 763 (9th Cir.2007).

PLAINTIFFS' RESPONSE IN OPPOSITION TO THINX'S MOTION TO DISMISS

otherwise not redundant, immaterial, impertinent, or scandalous. Rule 12(f). The purpose of a Rule 12(f) motion "is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney–Vinstein v. A.H. Robins Co.,* 697 F.2d 880, 885 (9th Cir.1983). It is not a way to circumventing the proper means of challenging claims.

## VI.   PLAINTIFFS ARE ENTITLED TO EQUITABLE RELIEF

### A. Plaintiffs are Entitled to Restitution Under the FAL and UCL

A determination of whether Plaintiffs are entitled to seek restitution is premature at the dismissal phase. However, Plaintiffs are entitled to seek restitution as Thinx benefitted financially from the sale of the Underwear, which was made possible and enhanced by Thinx's misleading advertisements and omissions. (FAC ¶172-175, 202-209). Restitution in a mislabeling case is measured by the amount necessary to compensate the purchaser for the difference between the product as labeled and the product as received." *Werdebaugh v. Blue Diamond Growers,* No. 12–CV–2724–LHK, 2014 WL 2191901, *22 (N.D.Cal. May 23, 2014) (citing *Colgan,* 135 Cal.App.4th at 700, 38 Cal.Rptr.3d 36. This calculation contemplates the production of evidence that attaches a dollar value to the "consumer impact or advantage" caused by the unlawful business practices. *Id.*  To the extent Plaintiffs' can prevail on their FAL and UCL claims, Plaintiffs may recover the purchase price of their Underwear, including a price premium attributable to Thinx's misrepresentations. *See In re NJOY, Inc. Consumer Class Action Litigation*, 120 F. Supp.3d 1050 (C.D. Cal. 2015); *In re Sony Gaming*

21

*Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 991 (S.D. Cal. 2014).

### B. Plaintiffs Have Properly Pled Their Claim for Unjust Enrichment.

Plaintiffs' unjust enrichment claim is pled in the alternative to their contract claims, as is permitted in this District, and is sufficiently alleged as an independent quasi-contract claim seeking restitution.

Plaintiffs allege that the Underwear contained chemicals and were not organic; that Thinx undertook pattern of conduct aimed at concealing these facts from consumers; and that Plaintiffs and other similarly situated consumers purchased the Underwear when they otherwise would not have purchased or would have paid less for them. (FAC ¶¶153-158). These practices have allowed Thinx to retain benefits, in the form of customer payments for the Undewear, under circumstances that make it unjust for Thinx to do so.  Stated otherwise, Thinx "has been unjustly conferred a benefit" through its coercion and bad faith. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Such allegations are sufficient to state a claim for unjust enrichment. *See id.; see also Munoz v. MacMillan*, 195 Cal.App.4th 648, 661 (Cal. Ct. App. 2011).

In general, the District Courts in the Ninth Circuit, have adhered to *Astiana*'s unambiguous holding that "[w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *See,*

*e.g.*, *Brenner v. Procter & Gamble Co.*, 2016 WL 8192946 at *8 (C.D. Cal. October 20, 2016) ("Because Plaintiff plausibly alleges that a consumer could have been enticed to purchase Defendant's product based on the allegedly misleading label, and a plaintiff may plead claims in the alternative, Plaintiff states a quasi-contract claim."); *Jonathan Chuang v. Dr. Pepper Snapple Grp., Inc.*, 2017 WL 4286577, at *7 (C.D. Cal. Sept. 20, 2017).

Here, as in *Astiana*, Plaintiffs have alleged that Defendant enticed them into purchasing certain products via false and misleading representations and omissions, which resulted in Defendant being unjustly enriched. Further, the allegations in the Complaint make clear that Thinx has unfairly obtained payments from its customers by misleading them and concealing material fact about the Underwear, and that it is therefore unjust for Thinx to retain those payments.

## VII.   THE COURT HAS JURISDICTION OVER NON-CALIFORNIA CLASS MEMBERS

Thinx argues that *Bristol-Myers Squibb Co. v. Superior Court of California*, *San Francisco County*, 137 S. Ct. 1773, 1780 (2017) requires dismissal of all claims for lack of personal jurisdiction over all claims by non-California class members who did not purchase the Products in California. (Def's Mot. at 24-25.) Thinx is wrong.

The overwhelming "weight of authority examining this issue has concluded that *Bristol-Myers* does not apply to class actions." *See e.g. Sotomayor v. Bank of Am., N.A.*, 377 F. Supp. 3d 1034, 1037 (N.D. Cal. 2019) (citing *Cabrera v. Bayer Healthcare, LLC*,

No. LA CV17-08525 JAK, 2019 WL 1146828 (C.D. Cal. March 6, 2019) (citing cases); *Sloan v. Gen. Motors LLC*, 287 F.Supp.3d 840, 857 (N.D. Cal. 2018); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, No. 17-CV-00564 NC, 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017); *Massaro v. Beyond Meat, Inc.*, No. 320CV00510AJBMSB, 2021 WL 948805, at *11 (S.D. Cal. Mar. 12, 2021) ([i]n recognizing this district court divide, the Court joins with the majority of courts in taking the position that *Bristol-Myers* does not apply to federal class actions.); *Sousa v. 7-Eleven, Inc.*, No. 19-CV-2142 JLS (RBB), 2020 WL 6399595, at *3 (S.D. Cal. Nov. 2, 2020) (same).

*Bristol-Myers* involved a mass tort action, not a class action, in which each plaintiff was named and thereby a "real party in interest." *Sotomayor*, 377 F. Supp. 3d at 1038. In contrast, class actions name only the class representative. Extending *Bristol-Myers* to class actions, as Defendant suggests, "would radically alter the existing universe of class action." *Id.* And the Supreme Court in *Bristol-Myers* did not "suggest any intent to dramatically curtail the availability of the class action device, requiring class actions, even those involving federal questions in federal court, to be filed in each state or only in the state in which the defendant is incorporated or has its principal place of business." *Id.*

While the Ninth Circuit has not specifically addressed this issue, the Seventh Circuit Court of Appeals recently followed the weight of authority.  See *Mussat v. IQVIA, Inc.,* 953 F.3d 441 (7th Cir. 2020). As the Seventh Circuit cogently explained:

> As long as the named representative meets the amount-in-

> controversy requirement, jurisdiction exists over the claims of the unnamed members. Nor are absent class members considered when a court decides whether it is the proper venue. We see no reason why personal jurisdiction should be treated any differently from subject-matter jurisdiction and venue: the named representatives must be able to demonstrate either general or specific personal jurisdiction, but the unnamed class members are not required to do so.

*Mussat*, 953 F.3d 441 at 447 (citations omitted).  Accordingly, the Court should deny Thinx's challenge to jurisdiction.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that this Court deny Defendant's Motion to Dismiss.

PLAINTIFFS' RESPONSE IN OPPOSITION TO THINX'S MOTION TO DISMISS

DATED: May 13, 2021.                     Respectfully submitted,


                                         /s/ Alex R. Straus
                                         Alex R. Straus, SBN 321366
                                         **WHITFIELD BRYSON LLP**
                                         16748 McCormack Street
                                         Los Angeles, CA  91436
                                         Telephone: (917) 471-1894
                                         Facsímile: (310) 496-3176
                                         alex@whitfieldbryson.com

                                         Daniel K. Bryson*
                                         Harper T. Segui
                                         Erin J. Ruben
                                         J. Hunter Bryson*
                                         **WHITFIELD BRYSON LLP**
                                         900 W. Morgan Street
                                         Raleigh, NC 27603
                                         P.O. Box 12638
                                         Raleigh, NC 27605
                                         Dan@whitfieldbryson.com
                                         Harper@whitfieldbryson.com
                                         Erin@whitfieldbryson.com
                                         Hunter@whitfieldbryson.com

                                         Rachel Soffin
                                         **GREG COLEMAN LAW PC**
                                         800 S. Gay Street, Suite 1100
                                         Knoxville, TN 37929
                                         Telephone: (865) 247-0080
                                         Facsimile: (865) 522-0049
                                         rachel@gregcolemanlaw.com


                                         *Pro hac vice* forthcoming

                                         *Attorneys for Plaintiffs and the Putative Class*

PLAINTIFFS' RESPONSE IN OPPOSITION TO THINX'S MOTION TO DISMISS

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 13th day of May, 2021, the foregoing document was filed electronically on the CM/ECF system, which caused all CM/ECF participants to be served by electronic means.


*/s/ Alex R. Straus*
Alex R. Straus, SBN 321366

*Attornes for Plaintiffs and the Putative Class*

PLAINTIFFS' RESPONSE IN OPPOSITION TO THINX'S MOTION TO DISMISS