UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 20-10341 JVS (JRPx) | Date | June 23, 2021 |
| Title | Destini Kanan and Haley Burgess v. Thinx Inc. | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiffs:         Attorneys Present for Defendants:

Not Present                              Not Present

**Proceedings:**   **[IN CHAMBERS] Order Regarding Motion to Dismiss**

Defendant Thinx Inc. ("Thinx") filed a motion to dismiss and strike portions of the First Amended Complaint ("FAC") filed by Plaintiffs Destini Kanan ("Kanan") and Haley Burgess ("Burgess") (together, "Plaintiffs"). Mot., Dkt. No. 38. Plaintiffs filed an opposition.[1] Opp'n., Dkt. No. 40. Thinx filed a reply. Reply, Dkt. No. 41.

For the following reasons, the Court **GRANTS in part and DENIES in part** the motion to dismiss, **DENIES** the motion to strike, and **GRANTS** the request for judicial notice. To the extent that the Court grants the motion to dismiss, the Court grants Plaintiffs leave to amend.

## I. BACKGROUND

The following facts are alleged in Plaintiffs' FAC. DAC, Dkt. No. 29.

Thinx is a leader in the alternative menstrual product market. Id.¶ 22. Thinx makes washable, reusable underwear designed to replace pads and tampons, or to be worn with tampons and menstrual cups for extra protection. Id. ¶ 23. Every advertisement, marketing campaign, instructional video, and public statement produced and distributed in relation to Thinx's products encourages customers to use Thinx Underwear the same way as traditional menstrual products and/or underwear. Id. ¶ 24.

---

[1] The Court notes that Plaintiffs do not oppose the motion to dismiss with respect to the injunctive claims, and consents to the dismissal of the injunctive claims without prejudice. See Opp'n., Dkt. No. 40, at 1 n. 2. Accordingly, the Court GRANTS the motion to dismiss the injunctive claims, with leave to amend.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 20-10341 JVS (JRPx) | Date | June 23, 2021 |
| Title | Destini Kanan and Haley Burgess v. Thinx Inc. | | |

    Thinx has been widely praised for its innovative approach to women's healthcare, and from its inception it has used a candid, personal approach to connect with its customers by openly discussing menstruation and its surrounding taboos in its advertising and marketing materials. Id. ¶ 25. Because Thinx is aware of growing concerns surrounding traditional single-use menstrual products, especially among younger women, it has always positioned its Thinx Underwear as a safe, effective, and sustainable alternative from an honest and trustworthy brand. Id. ¶ 27. Thinx's website claims that Thinx products are free of harmful chemicals, toxic metals and nanoparticles, use only organic cotton, and undergo rigorous third party testing. Id. ¶¶ 27-30.

    Plaintiffs sought independent third-party testing using industry standard methods to determine whether Thinx Underwear contain harmful chemicals. Id. ¶¶ 31-32. This third-party testing "found short-chain PFAS chemicals within Thinx Underwear at material and above trace amounts." Id. ¶ 33. Polyfluoroalkyl substances ("PFAS") are a category of man-made chemicals often used to enhance the performance of textiles and apparel, typically by making them water repellant and/or stain resistant. Id. ¶¶ 35-36. PFAS are categorized as either "long-chain" or "short-chain" based on the number of carbon atoms they contain; long-chain PFAS contain more than 8 carbon atoms, while any PFAS with fewer than 8 carbon atoms are short-chain. Id. ¶ 33. All PFAS contain carbon-fluorine bonds—one of the strongest in nature—making them highly persistent in the environment and in human bodies. Id. Long-chain PFAS have been phased out of use in the US and Europe due to their known toxicity to humans and the environment. Id. ¶ 39. Long-chain PFAS are "bioaccumulative," meaning they build up in the body over time, and they have been associated with a variety of negative health effects for humans, including cancer. Id. Short-chain PFAS are currently used in the apparel industry as a replacement for the eliminated long-chain PFAS, but there are no long-term studies to indicate whether short-chain PFAS are safer for consumers; in fact, there are studies to suggest that they pose similar health risks to long-chain PFAS, including bioaccumulation. Id. ¶ 40.

    Antimicrobial textile finishes first gained popularity in the early 2010s as a way to make clothing—particularly athletic clothing—odor-free. Silver and copper are the most common ingredients in antimicrobial clothing, and they work by killing bacteria that causes odor. Id. ¶ 45. Antimicrobial clothing has decreased in popularity in recent years due to concerns associated with silver shedding from fabric and causing harm to humans

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 20-10341 JVS (JRPx) | Date | June 23, 2021 |
| Title | Destini Kanan and Haley Burgess v. Thinx Inc. | | |

and the environment. Id. ¶ 46. On its website, Thinx states that its products do not contain toxic metals or engineered nanoparticles, but that instead its products are treated with "Agion." Id. ¶ 47. Agion is an antimicrobial treatment that uses silver and copper nanoparticles to reduce odor in textiles. Id. ¶ 48. Nanoparticles are small-scale substances that are undetectable to the human eye. It is a nanoparticle's size, not whether it is natural or engineered, that creates a hazard since these small particles can enter the human body through inhalation, ingestion, and skin absorption. Id. ¶ 49. Silver nanoparticles create a particular risk to the female body. Id. ¶¶ 51-56. Thinx does not reveal to consumers that Agion is antimicrobial, or that it contains silver and copper nanoparticles, which are known to migrate and pose a safety hazard to the female body and the environment. Id. ¶ 57.

Thinx represents on its website and in all of its marketing and advertising materials that its cotton underwear is organic, so Plaintiffs believed they were purchasing organic products. Id. ¶ 58. "Organic" is generally understood to mean an agricultural product produced without the use of chemical fertilizers, pesticides, or other artificial agents. Id. Global Organic Textile Standards ("GOTS") is the worldwide leading processing standard for organic fibers, and in March 2020, GOTS released its latest standards, which prohibit the use of both long- and short-form PFAS in any stage of processing. Id. ¶¶ 61-63. Thinx is not eligible for GOTS certification for its finished cotton underwear because they contain PFAS, but despite this, Thinx released a GOTS "Certificate of Compliance" which was issued to a company called Ocean Lanka. Id. ¶ 64. Thinx held out this certificate as its own, even though it knew, or at least should have known, that the certification did not refer to the finished Thinx Underwear. Id. On its website, under the Frequently Asked Questions Section, Thinx made the following representation: "Are they really organic? Yes, our Organic cotton line is made with organic cotton!" Id. ¶ 66. Plaintiffs purchased the Thinx Underwear based upon the belief that the Thinx Underwear was organic. Id. ¶ 69.

In response to allegations that Thinx Underwear contains harmful chemicals, Thinx's CEO, Maria Molland ("Molland") released a statement that contained misinformation regarding safety testing and PFAs, and provided testing results that were incomplete or inaccurate. Id. ¶¶ 70-84.

In 2019, Kanan purchased Thinx Underwear from a Nordstrom in Canoga Park, California. Id. ¶ 85. After becoming familiar with the product through its advertising, Kanan visited the Thinx website, www.shethinx.com, which provides detailed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  CV 20-10341 JVS (JRPx)  Date  June 23, 2021

Title  Destini Kanan and Haley Burgess v. Thinx Inc.

information about the products. Id. ¶ 87. Despite Thinx's representations that its product was safe and fit for the purpose of menstrual protection, during the time period in which Kanan used the underwear she experienced recurrent yeast infections and urinary tract infections. Id. ¶ 90. In or around August of 2020, Kanan became aware of reports that Thinx Underwear contained harmful chemicals. Id. ¶ 91. When Kanan learned that Thinx mislabeled its products and failed to disclose harmful chemicals the products contained, she stopped purchasing the Thinx Underwear. Id. ¶ 92.

In May of 2020, Burgess purchased Thinx Sport Underwear from Amazon. Id. ¶ 94. At the time of Burgess' purchase, Thinx was on public notice of the harmful chemicals in its products, and had further misrepresented the safety of its Underwear. Id. ¶ 95. Burgess purchased Thinx Underwear because she was seeking an eco-friendly and chemical-free alternative to traditional feminine hygiene products, and she sought out information regarding the product's ingredients and certifications on Thinx's website. Id. ¶¶ 96-97. In making her purchase, Burgess specifically relied on Thinx's representations on its website that the product was safe, free of harmful chemicals, certified for ecological safety, organic, and OEKO-TEX certified. Id. ¶ 98. When Burgess learned in 2021 that Thinx's products contained harmful chemicals, she stopped purchasing the Underwear. Id.

Plaintiffs sued on behalf of themselves and as representatives of all those similarly situated for: (1) Breach of Implied Warranty; (2) Breach of Express Warranty; (3) Unjust Enrichment; (4) (in the alternative) Violation of California False Advertising Law (Cal. Bus. & Prof. Code § 17500, *et seq*.); (5) Violation of California Legal Remedies Act (Cal. Bus. & Prof. Code § 17500, *et seq*.); Violation of California Unfair Competition Law  (Cal. Bus. & Prof. Code § 17200, *et seq*.); and (6) Negligent Failure to Warn.

## II. Legal Standard

### A. Motion to Dismiss

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. CV 20-10341 JVS (JRPx)     Date June 23, 2021

Title     Destini Kanan and Haley Burgess v. Thinx Inc.

     To resolve a Rule 12(b)(6) motion under Twombly, a court must follow a two-pronged approach. First, a court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. As such, a pleading must allege facts that permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Courts "'are not bound to accept as true a legal conclusion couched as a factual allegation.'" Id. (quoting Twombly, 550 U.S. at 555). A court considering a motion to dismiss may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679.

     Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." Id. at 679. This determination is context-specific; the Court must draw on its experience and common sense, but there is no plausibility where the court cannot "infer more than the mere possibility of misconduct." Id.

    **B. Motion to Strike**

     Under Rule 12(f), a party may move to strike any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). A motion to strike is appropriate when a defense is insufficient as a matter of law. Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1057 (5th Cir. 1982). The grounds for a motion to strike must appear on the face of the pleading under attack, or from matters of which the Court may take judicial notice. SEC v. Sands, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995).

     The essential function of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds by Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994). "As a general proposition, motions to strike are regarded with disfavor because [they] are often used as delaying tactics, and because of the limited importance of pleadings in federal practice." Sands, 902 F. Supp. at 1165-66 (alteration in original) (internal quotation marks omitted). Therefore, courts frequently require the moving party to demonstrate prejudice "before granting the requested relief, and 'ultimately whether to grant a motion to strike falls on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 20-10341 JVS (JRPx) | Date | June 23, 2021 |
| Title | Destini Kanan and Haley Burgess v. Thinx Inc. | | |

the sound discretion of the district court.'" Greenwich Ins. Co. v. Rodgers, 729 F. Supp. 2d 1158, 1162 (C.D. Cal. 2010) (quoting Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc., 217 F.Supp.2d 1028, 1033 (C.D.Cal.2002)).

## III. DISCUSSION

### A. Motion to Dismiss

*i. Rule 9(b) Heightened Pleading Requirement*

Thinx first moves to dismiss on the grounds that Plaintiffs' claims fail to satisfy Fed. R. Civ. P. 9(b)'s heightened pleading requirement for claims sounding in fraud. Mot., Dkt. No. 38, at 5. Specifically, Thinx asserts that "Plaintiffs fail to satisfy the requirement that their fraud-based averments must plead specific facts that establish the 'who, what, when, where, and how' of the misconduct charged.'" Mot., Dkt. No. 38, at 5 (quoting Kearns v. Ford Motor Co., 567 F.3d. 1120, 1124 (9th Cir. 2009)).

Under Fed. R. Civ. P. 9(b), a plaintiff must plead each element of a fraud claim with particularity, i.e., the plaintiff "must set forth more than the neutral facts necessary to identify the transaction." Cooper v. Pickett, 137 F.3d 616, 625 (9th Cir. 1997) (emphasis in original) (quoting Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.), 42 F.3d 1541, 1548 (9th Cir. 1994)). A fraud claim must be accompanied by "the who, what, when, where, and how" of the fraudulent conduct charged. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting Cooper, 137 F.3d at 627). "A pleading is sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989). Statements of the time, place, and nature of the alleged fraudulent activities are sufficient, but mere conclusory allegations of fraud are not. Id. Furthermore, though allegations based on information and belief are usually insufficient, in circumstances of corporate fraud, this rule may be relaxed as to matters within the opposing party's knowledge. Id.

Thinx argues that Plaintiffs' allegations regarding the PFAS are not specific enough under to satisfy the Rule 9(b) pleading standard. Mot., Dkt. No. 38, at 6. While the Complaint alleges that Thinx did not test for short-chain PFAS, Thinx notes, the majority of materials Plaintiffs cite to relate to long-chain PFAS, which Plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    CV 20-10341 JVS (JRPx)      Date    June 23, 2021

Title      Destini Kanan and Haley Burgess v. Thinx Inc.

concede are not present in Thinx Underwear. Id. (citing FAC ¶¶ 39, 72.) What is more, Thinx argues, the FAC concedes that only long-chain PFAS are regulated, and that with respect to short-chain PFAS, Plaintiffs rely on the National Toxicology Program's research into "*potential* adverse health outcomes" based on studies of two specific short-chain PFAS and a single short-chain PFAS compound that are far from conclusive. Id., at 7. Thinx points out that Plaintiffs say that testing revealed the presence of short-chain PFAS "at material and above trace amounts," but that they do not reveal what that amount was or even what kind of PFAS were at issue. See FAC ¶¶ 33, 65, 83. Furthermore, Thinx argues that Plaintiffs do not provide any information regarding the testing itself: not the styles or number of pairs of underwear tested, the standard relied on for the testing, what specifically they tested for, when the testing was done, or what methods were used. This, Thinx argues, is insufficient under Rule 9(b)'s heightened pleading requirements.

       Regarding the organic cotton allegations, Thinx argues that they represent only that the cotton used in three of the nine styles of underwear at issue is organic, and that Thinx expressly states that the Organic Cotton brief is made with 95% organic cotton, but that the remainder of the underwear is made of other materials. Mot., Dkt. No. 38, at 8. Accordingly, Thinx asserts, its answer on the FAQ page to the question: "Are they really organic? Yes, our Organic cotton line is made with organic cotton" is accurate. Id., at 8 (citing FAC ¶¶ 66).

       Regarding the Agion treatment, Thinx argues that Plaintiffs allege that the silver zeolite and silver copper zeolite in Agion is migratory but offer no factual allegations to support that claim, and do not allege that the Agion has been deemed by any regulatory body or scientific research to be unsafe. Id., at 8 (citing FAC ¶ 56).

       In response, Plaintiffs state that Thinx's Rule 9(b) arguments actually speak to the credibility of the allegations in the Complaint, and are in fact factual disputes (having no bearing on a motion to dismiss), rather than the sufficiency arguments regarding the plausibility of the allegations themselves under Rule 9(b). Opp'n., Dkt. No. 40, at 5. On this point, the Court agrees. Thinx seems to be arguing predominantly about the merits of Plaintiffs' claims, which is inappropriate at the motion to dismiss stage. Although Plaintiffs are required to allege more under Rule 9(b) than they would be required to allege for a non-fraud based claim, they are not required to prove that they win on the merits at this stage.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  CV 20-10341 JVS (JRPx)   Date  June 23, 2021

Title  Destini Kanan and Haley Burgess v. Thinx Inc.

Still on the issue of Rule 9(b), Thinx argues that exposure and reliance are essential elements for a fraud-based claim under California's FAL, CLRA, and UCL, as well as for an alleged breach of express warranty claim that is based on advertising representation, and that Plaintiffs have failed to sufficiently allege exposure and reliance. Mot, Dkt. No. 38, at 10. Thinx contends that Plaintiffs do not allege what specific advertisements they saw that led to their reliance or what those representations said. Id., at 11. The Court disagrees with Thinx here as well.

Rule 9(b) demands only a level of detail sufficient to place a defendant on notice of the basis for a plaintiff's claims and to demonstrate that a plaintiff is not on a "fishing expedition." See In re Clorox Consumer Litig., 894 F.Supp.2d 1224, 1234 (N.D.Cal. 2012); see also Bronson v. Johnson & Johnson Inc., WL 5731817, at *6 (N.D.Cal. 2013). Here, Plaintiffs allege that they saw and relied on representations on Thinx's website, advertising, product labels, and packaging. See FAC ¶¶ 86-89, 96-98. Plaintiffs also reproduced portions of the website and product labels. Id. ¶¶ 27-30, 47. Plaintiffs have alleged that these representations date back to at least 2019, with some representations spanning the Product's lifetime. FAC ¶¶ 22, 34, 62, 70, 85, 91, 94. The Court finds these allegations to be specific enough to put Thinx on notice of the advertisements and representations at issue upon which Plaintiffs allege to have relied. Accordingly, the Court **DENIES** the motion to dismiss Plaintiffs' allegations on the ground that they fail to comply with the requirements of Rule 9(b).

*ii. Standing*

Next, Thinx argues that Plaintiffs' claims should be dismissed because Plaintiffs lack Article III standing. Mot., Dkt. No. 38, at 15. Pursuant to Article III of the Constitution, the Court's jurisdiction over a case "depends on the existence of a 'case or controversy.'" GTE Cal., Inc. v. FCC, 39 F.3d 940, 945 (9th Cir. 1994). A "case or controversy" exists only if a plaintiff has standing to bring the claim. Nelson v. NASA, 530 F.3d 865, 873 (9th Cir. 2008), rev'd on other grounds, 131 S. Ct. 746 (2011). To have standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180-81 (2000); see

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 20-10341 JVS (JRPx) | Date | June 23, 2021 |
| Title | Destini Kanan and Haley Burgess v. Thinx Inc. | | |

also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); Nelson, 530 F.3d at 873. The plaintiff invoking federal jurisdiction carries the burden of satisfying these elements. Lujan, 504 U.S. at 561. A plaintiff "must demonstrate standing separately for each form of relief sought." Laidlaw, 528 U.S. at 185. Article III standing may be raised at any time, and even if neither side raises the issue, the Court has an independent obligation to consider standing *sua sponte*. RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1056 (9th Cir. 2002); Doe v. Match.com, 789 F. Supp. 2d 1197, 1200 n.5 (C.D. Cal. 2011).

  Regarding the "injury in fact" requirement, Thinx contends that "Plaintiffs do not plausibly allege that they (or anyone else) has experienced any of the health risks they claim are associated with short-chain PFAS or with the non-migratory silver contained in Agion." Mot., Dkt. No. 38., at 14. Plaintiffs respond that they have alleged a "quintessential in jury in fact" because "they and Class Members 'spent money that, absent defendants' actions, they would not have spent." Opp'n., Dkt. No. 40, at 14 (quoting Maya v. Centex Corp., 658 F.3d 1060, 1069 (9th Cir. 2011)). Plaintiffs state that they purchased products that they would not have otherwise purchased (or would have paid substantially less for) had they known the truth about the products in question. Id. (citing FAC ¶¶ 3, 67, 88, 93, 98, 101). Thinx states that "Plaintiffs cannot rely on their 'economic loss' theory of injury to save their speculative and insufficient allegations that Thinx Underwear posed a health risk. Plaintiffs cannot base an allegation that they overpaid for products based on a 'defect'—a supposed health risk—that is not plausibly alleged." Mot., Dkt. No. 38, at 16.

  The Court agrees with Plaintiffs that their allegations of economic injury are sufficient to satisfy the injury in fact requirement of Article III standing. Plaintiffs have plausibly alleged that Thinx made material misstatements regarding the composition of their products that led Plaintiffs to purchase (or pay more for) products that they would not have otherwise purchased. Once again, the Court finds that Thinx's arguments about the accuracy of the alleged testing and the causation versus correlation issue are inappropriate at the motion to dismiss stage. The Court finds that Plaintiffs have alleged a harm that constitutes an injury in fact for the purposes of Article III standing. Assuming all of the factual allegations alleged in the FAC to be true, the Court must accept that Plaintiffs suffered a concrete and particularized injury based on the fact that they were allegedly deceived by Thinx's representations, and then paid money that they would not otherwise have paid had they known about the true nature of Thinx's products. As

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  CV 20-10341 JVS (JRPx)                              Date   June 23, 2021

Title     Destini Kanan and Haley Burgess v. Thinx Inc.

such, the Court **DENIES** the motion to dismiss Plaintiffs' claims on the grounds of standing.

Next, Thinx argues that Plaintiffs lack standing to seek injunctive relief. Mot., Dkt. No. 38, at 16. As noted above, Plaintiffs consented to the dismissal of their injunctive claims without prejudice. Opp'n., Dkt. No. 40, at 1, n. 2. Accordingly, the Court will not reach the issue of standing as it relates to the injunctive claims.

   *iii. Warranty Claims*

Thinx next moves to dismiss Plaintiffs' warranty claims on the ground that they fail as a matter of law. Mot., Dkt. No. 38, at 17. The Court will discuss Plaintiffs' express warranty claims and their implied warranty claims in turn.

   1. Express Warranty

In order to allege breach of express warranty under California law, the buyer must allege that the seller: "(1) made an affirmation of fact or a promise, or otherwise described the goods; (2) the statement formed part of the basis of the bargain; (3) the express warranty was breached; (4) the plaintiff was harmed; and (5) the breach of warranty was a substantial factor causing the plaintiff's harm." Stearns v. Select Comfort Retail Corp., 763 F. Supp. 2d 1128, 1142 (N.D. Cal. 2010). Thinx argues that Plaintiffs do not effectively establish misrepresentation and that neither Plaintiff identifies a statement that she saw and relied on. Mot., Dkt. No. 38, at 17-18. Plaintiffs respond that Thinx made various statements in its advertising, marketing, and packaging that form the basis of an express warranty, and that these representations formed the basis of their respective decisions to purchase the Underwear. Opp'n., Dkt. No. 40, at 15-16.

The Court finds that Plaintiffs have adequately plead a breach of express warranty. Plaintiffs have alleged that the Underwear was, contrary to advertisement and packaging: allegedly not organic cotton, not safe for normal use of collecting or absorbing menstrual fluid and other vaginal discharge, and made of material that contained harmful chemicals. FAC ¶¶ 88, 90, 93, 98, 99, 101. Plaintiffs also have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 20-10341 JVS (JRPx) | Date | June 23, 2021 |
| Title | Destini Kanan and Haley Burgess v. Thinx Inc. | | |

alleged that Thinx claimed on its website that its products are free of harmful chemicals, sustainable, and rigorously tested to put the consumer's safety first. Id. ¶¶ 27, 28, 29. Plaintiffs contend that Thinx has also claimed that its cotton Underwear is "organic" on both its website and the product's packaging. Id. ¶¶ 28, 58, 88, 98. Finally, Plaintiffs have alleged that they saw and relied upon these statements. Id. ¶¶ 88-89, 96-98, 135. Accordingly, the Court will not dismiss Plaintiffs' express warranty claims for failure to state a claim as a matter of law.

### 2. Implied Warranty

Plaintiffs assert two implied warranty claims under California law. They allege that Thinx "impliedly warranted that Thinx Underwear were of merchantable quality and fit for use," which is governed by the California Uniform Commercial Code ("UCC"), and they allege that Thinx violated the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1792 ("Song-Beverly Act"). FAC ¶¶ 145, 147, 150. Thinx moves to dismiss both implied warranty claims. Mot., Dkt. No. 38, at 18. The UCC implied warranty elements also apply to Song-Beverly Claims. See Isip v. Mercedes-Benz USA, LLC, 155 Cal. App. 4th 19, 26-27 (2007).

The implied warranty of merchantability under both the UCC and Song-Beverly Act requires that goods are "fit for the ordinary purposes for which such goods are used." Cal. Com. Code § 2314(2)(c). The implied warranty of merchantability is breached if "the product [does] not possess even the most basic degree of fitness for ordinary use." Sims v. Kia Motors Am., Inc., 2014 WL 12558251, at *3 (C.D. Cal. Oct. 8, 2014) (quoting Mocek v. Alfa Leisure, Inc., 114 Cal. App. 4th 402, 406 (2003)). "At the pleading stage, Plaintiffs must . . . allege either the manifestation of the defect in their product or a substantial certainty of manifestation." Sims, 2014 WL 12558251, at *3 (citing Birdsong v. Apple, Inc., 590 F.3d 955, 959 (9th Cir. 2009)). Thinx argues that Plaintiffs do not allege "that Thinx Underwear were unwearable or otherwise not fit for use, or that they did not perform as advertised or were not of the same quality as those generally accepted in the trade." Mot., Dkt. No. 38, at 18.

In response, Plaintiffs point out that a product is also not merchantable if it does not "conform to the promises or affirmations of fact made on the container or label if any. Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 20-10341 JVS (JRPx) | Date | June 23, 2021 |
| Title | Destini Kanan and Haley Burgess v. Thinx Inc. | | |

to select or furnish suitable goods, there is ... an implied warranty that the goods shall be fit for such purpose." Opp'n., Dkt. No. 40, at 16 (citing Cal. Com. Code §§ 2314(2)(f), 2315). Plaintiffs contend that their allegations meet this standard because Thinx was aware that consumers relied on its skill and/or judgment in furnishing safe and sustainable menstrual products, and because Thinx directed its marketing towards women intending to purchase safe alternatives to traditional menstrual products. Id., at 17.

The Court agrees with Thinx that Plaintiffs did not allege that Thinx Underwear are unwearable or otherwise not fit for use or that they failed to perform as advertised or to be of the same quality as those generally accepted in the trade. As such, the only question to consider is whether Plaintiffs' allegations meet the standard set out by Cal. Com. Code §§ 2314(2)(f), 2315 for an implied warranty based on a particular purpose.

"The implied warranty of fitness for a particular purpose is a warranty implied by law when a seller has reason to know that a buyer wishes goods for a particular purpose and is relying on the seller's skill and judgment to furnish those goods." Martinez v. Metabolife Internat., Inc. 113 Cal.App.4th 181, 189 (2003)."A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability." Am. Suzuki Motor Corp. v. Superior Court, 37 Cal. App. 4th 1291, 1295 (1995). The Court finds that Plaintiffs do not allege that they purchased the Thinx Underwear for any unique purpose aside from what the Thinx underwear is traditionally marketed as: a menstrual product solution. There are no allegations that Plaintiffs required the Thinx Underwear for a specific use that was peculiar to their business or that they relied on the seller's skill or judgment in purchasing the Thinx Underwear. Plaintiffs purchased menstrual solution underwear to wear as menstrual solution underwear, the ordinary purpose for which Thinx Underwear is sold. See e.g., Smith v. LG Elecs. U.S.A., Inc., WL 989742, at *8 (N.D. Cal. 2014) ("As for the claim for breach of the implied warranty of fitness for a particular purpose, plaintiff has identified no 'particular purpose' for which she purchased the washing machine. She purchased it to wash her laundry, which is the 'ordinary' purpose of a washing machine."); see also Mathison v. Bumbo, WL 8797937, at *11 (C.D.Cal. 2008) ("There is nothing peculiar about using a baby seat to secure infants and toddlers.") Had Plaintiffs alleged that they purchased ordinary, standard, traditional underwear from a seller who knew they intended to use it

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 20-10341 JVS (JRPx) | Date | June 23, 2021 |
| Title | Destini Kanan and Haley Burgess v. Thinx Inc. | | |

as a menstrual solution and relied on that seller's skill and judgment in making that purchase, they might have stated a claim for breach of the implied warranty of merchantability for a particular purpose. But Thinx Underwear is not traditional underwear– its ordinary use *is* to be a menstrual solution. Accordingly, purchasing Thinx Underwear as a menstrual solution is not purchasing it for a particular use. Plaintiffs allege that they purchased the Thinx absorbent, menstrual solution Underwear to use as absorbent, menstrual solution underwear. Accordingly, there is no particular purpose plead– using menstrual underwear as menstrual underwear is no different from using a washing machine to clean clothing or a baby seat to secure an infant.

Accordingly, the Court finds that Plaintiffs have failed to state a claim for relief pursuant to the implied warranty of merchantability. The Court therefore **GRANTS** the motion to dismiss the implied warranty claims, with leave to amend, and **DENIES** the motion to dismiss the express warranty claims.

### *iv. Negligent Failure to Warn*

Thinx next asks the Court to dismiss the claims for negligent failure to warn on the grounds that Plaintiffs have failed to establish that Thinx did not act as a reasonably prudent manufacturer or that it owed them a duty because a manufacturer of menstrual products has no duty to disclose individual ingredients. Mot., Dkt. No. 38, at 20. Thinx also argues that Plaintiffs did not allege that the defect in question caused injury. Id.

A negligent failure to warn claim "requires a plaintiff to [allege] that a manufacturer or distributor did not warn of a particular risk for reasons which fell below the acceptable standard of care, i.e., what a reasonably prudent manufacturer would have known and warned about." Mariscal v. Graco, Inc., 52 F. Supp. 3d 973, 992 (N.D. Cal. 2014) (citing Anderson v. Owens–Corning Fiberglas Corp., 53 Cal.3d 987, 1002 (1991)).

Plaintiffs argue that Thinx can be liable for failure to warn because it failed to warn of a known or reasonably scientifically knowable risk. Opp'n., Dkt. No. 40, at 18 (citing Carlin v. Superior Ct., 13 Cal. 4th 1104, 1112–13, 920 P.2d 1347, 1351 (1996)). Specifically, Plaintiffs contend that Thinx was put on notice in January of 2020 that its Underwear contained harmful chemicals, but that Thinx "continued to conceal this information and otherwise misrepresent the safety of its products." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 20-10341 JVS (JRPx) | Date | June 23, 2021 |
| Title | Destini Kanan and Haley Burgess v. Thinx Inc. | | |

The Court disagrees with Plaintiffs that their allegations sufficiently state a claim for relief under a theory of negligent failure to warn. Plaintiffs have acknowledged that the FDA does not require the disclosure of individual ingredients in menstrual hygiene products. FAC ¶ 3. What is more, Plaintiffs have failed to plead that the products in question contain short-chain PFAS of a type and at a level that poses a risk of harm or migratory silver, meaning that they have not pled a danger of which Thinx was allegedly aware of and of which it failed to warn. Accordingly, the Court **GRANTS** the motion to dismiss the negligent failure to warn claim, with leave to amend.

*v. Equitable Relief*

Lastly, Thinx seeks to dismiss the UCL, FAL, and Unjust Enrichment claims on the grounds that these statutes provide exclusively equitable relief, not damages, and that Plaintiffs do not and cannot establish that they lack an adequate remedy at law. Mot., Dkt. No. 38, at 32.

Plaintiffs respond by arguing that a determination of whether they are entitled to seek restitution is premature at the dismissal phase, but that they are entitled to do so because Thinx benefitted financially from the sale of the Underwear, "which was made possible and enhanced by Thinx's misleading advertisements and omission." Opp'n., Dkt. No. 40, at 21. The Court agrees that to the extent Plaintiffs can prevail on their FAL and UCL claims, they may be able to recover the purchase price of their Underwear including a price premium attributable to Thinx's misrepresentations.

Regarding the unjust enrichment claims, Plaintiffs argue that these claims are properly pled in the alternative to their contract claims as independent quasi-contract claims seeking restitution. Opp'n., Dkt. No. 40, at 22. They cite to their allegations that the Underwear contained chemicals and were not organic, that Thinx undertook pattern of conduct aimed at concealing these facts from consumers, and that they purchased the Underwear when they otherwise would not have. FAC ¶¶153-158. Plaintiffs allege that these practices have allowed Thinx to retain benefits, in the form of customer payments for the Undewear, under circumstances that make it unjust for Thinx to do so. Opp'n., Dkt. No. 40, at 22.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  CV 20-10341 JVS (JRPx)  Date  June 23, 2021

Title  Destini Kanan and Haley Burgess v. Thinx Inc.

The Court agrees with Plaintiffs that unjust enrichment is an appropriate alternative to their contract claims. Although unjust enrichment is not a standalone claim in California, "unjust enrichment and restitution are not irrelevant in California law. Rather, they describe the theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.' The return of that benefit is the remedy 'typically sought in a quasi-contract cause of action.'" Astiana v. Hain Celestial Grp., Inc., 783 F.3d 753, 762 (9th Cir. 2015) (internal citation omitted). Because Plaintiffs plausibly allege that consumers could have been (and were) enticed to purchase Thinx's product based on allegedly misleading information, and because plaintiffs may plead claims in the alternative, they sufficiently state a quasi-contract claim. See Chuang v. Dr. Pepper Snapple Grp., Inc., 2017 WL 4286577, at *7 (C.D. Cal. 2017).

Accordingly, the Court **DENIES** the motion with respect to the claims for equitable relief.

*vi. Personal Jurisdiction*

Finally, Thinx seeks to dismiss the claims as to non-California class members. Mot., Dkt. No. 38, at 24. Thinx argues that Plaintiffs bring the present case on behalf of themselves and "all persons residing in the United States who purchased Thinx Underwear" (FAC ¶ 117), but that Plaintiffs cannot represent a nationwide class when this Court would lack personal jurisdiction over the non-California class members. Id., at 24 (citing Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County, 137 S. Ct. 1773 (2017)).

Plaintiffs respond that Bristol-Myers in inapplicable here, as Bristol-Myers involved a mass tort action, not a class action, in which each plaintiff was named and thereby a "real party in interest," (as opposed to class actions that name only the class representative). Opp'n., Dkt. No. 40, at 24. The Court agrees with Plaintiffs that the overwhelming "weight of authority examining this issue has concluded that Bristol-Myers does not apply to class actions." See e.g. Sotomayor v. Bank of Am., N.A., 377 F. Supp. 3d 1034, 1037 (N.D. Cal. 2019) (citing Cabrera v. Bayer Healthcare, LLC, No. LA CV17-08525 JAK, 2019 WL 1146828 (C.D. Cal. 2019) (citing cases). Accordingly, the Court **DENIES** the motion to dismiss the action with respect to the non-resident California putative class members.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 20-10341 JVS (JRPx) | Date | June 23, 2021 |
| Title | Destini Kanan and Haley Burgess v. Thinx Inc. | | |

**B. Motion to Strike**

Thinx moves to strike various portions of Plaintiffs' FAC pursuant to Fed. R. Civ. P. 12(f). Mot., Dkt. No. 38, at 23. Plaintiffs oppose. Dkt., No. 40, at 19-21. Specifically, Thinx asks the Court to strike the following items:

- FAC ¶¶ 25, 192 (Thinx's "innovative" marketing approach, on which no Plaintiff claims to have relied (FAC ¶¶ 25, 192).

- FAC ¶ 39 (Long-chain PFAS, which Plaintiffs do not allege are present in Thinx Underwear).

- FAC ¶ 44 (Actions of companies other than Thinx).

- FAC ¶¶ 58-69, 81 (Whether Thinx Underwear is organic and allegations regarding Ocean Lanka's GOTS certification, which are unsupported and conclusory).

- FAC ¶¶ 45-57 (Unsubstantiated claims regarding Agion treatment).

Mot., Dkt. No. 38, at 23-24.

The Court does not find that any of these paragraphs should be stricken. Regarding the marketing allegations in FAC ¶¶ 25, 192, Plaintiffs' allegations regarding Thinx's uniform marketing approach are relevant to all their claims regarding misleading advertising and Plaintiffs' decisions to purchase Thinx Underwear. See e.g. FAC ¶¶ 4, 24-27, 86-93, 94-101, 192. The Court finds that FAC ¶ 39 is not immaterial either, because although Plaintiffs do not allege the presence of long-chain PFAS in Thinx Underwear, Plaintiffs have alleged that Thinx issued a statement denying its use of long-chain PFAS chemicals for the purpose of misleading reasonable consumers into believing no chemicals were present in the Underwear. FAC ¶ 75. The Court finds that FAC ¶ 44 is not immaterial because it is relevant to Plaintiffs' claims regarding consumer expectations about the products in the marketplace. The Court will also not strike FAC ¶¶ 45-57, 58-69, 81 because the Court disagrees that they are unsubstantiated. Plaintiffs provided allegations of an independent expert investigation, studies published

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 20-10341 JVS (JRPx) | Date | June 23, 2021 |
| Title | Destini Kanan and Haley Burgess v. Thinx Inc. | | |

by the National Center for Biotechnology Information (a division of the National Institute of Health), the European Chemicals Agency, and the European Commission. FAC ¶¶49-57, fn 25-34. Furthermore, even if these allegations were unsupported or conclusory—which the Court does not believe they are–this would still not provide a basis to strike them under Rule 12(f). Accordingly, the Court **DENIES** the motion to strike in its entirety.

### C. Request for Judicial Notice

Thinx filed a request for judicial notice ("RJN"). RJN, Dkt. No. 39. Plaintiffs did not oppose. See generally Opp'n., Dkt. No. 40. Thinx seeks judicial notice of the following documents:

- Exhibit A: Printout of the product page for Thinx period underwear (as well as certain other Thinx products), captured on April 14, 2021, at this URL: https://www.shethinx.com/collections/thinx-shop-all.

- Exhibit B: Printout of an article titled "Short-chain and long-chain PFAS show similar toxicity, US National Toxicology Program says," captured on April 14, 2021, at this URL: https://cen.acs.org/environment/ persistentpollutants/Short-chain-long-chain-PFAS/97/i33.

- Exhibit C: Printout of an article titled "Research Overview of Per- and Polyfluoroalkyl Substances (PFAS)," from the National Toxicology Program, captured on April 14, 2021, at this URL: https://ntp.niehs.nih.gov/ whatwestudy/topics/pfas/index.html

- Exhibit D: Printout of the product page for the Cotton Brief, captured on April 14, 2021, at this URL: https://www.shethinx.com/collections/thinx-organiccotton/ products/thinx-cotton-brief?variant=50491926407.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. CV 20-10341 JVS (JRPx)     Date June 23, 2021

Title     Destini Kanan and Haley Burgess v. Thinx Inc.

RJN, Dkt. No. 39, at 2.

     Under Federal Rule of Evidence 201, the Court may take judicial notice of matters of public record if the facts are not "subject to reasonable dispute." Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001); see Fed. R. Evid. 201(b). The Court takes judicial notice of the documents in the RJN pursuant to Fed. R. Evid. 201. All of the documents in the RJN contain facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). What is more, the Court finds that all of these documents are incorporated by reference into Plaintiffs' FAC. Accordingly, the Court **GRANTS** the RJN in its entirety.

### IV. CONCLUSION

     For the foregoing reasons, the Court **GRANTS in part and DENIES in part** the motion to dismiss, **DENIES** the motion to strike, and **GRANTS** the request for judicial notice. To the extent that the Court grants the motion to dismiss, the Court grants Plaintiffs leave to amend.

     **IT IS SO ORDERED.**